NO. 14-3084

**UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

DIGITAL RECOGNITION NETWORK, INC.;
VIGILANT SOLUTIONS, INC.,
*Plaintiffs-Appellants*

*v.*

MIKE BEEBE, *in his official capacity as
Governor of the State of Arkansas;*
DUSTIN MCDANIEL, *in his official capacity
as Attorney General of the State of Arkansas,*
*Defendants - Appellees*

On Appeal from the United States District Court
For The Eastern District of Arkansas
Case No. 4:14-CV-00327 BSM

**BRIEF OF APPELLEES MIKE BEEBE
AND DUSTIN MCDANIEL**

PATRICK E. HOLLINGSWORTH
Arkansas Bar No. 84075
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1051
Patrick.hollingsworth@arkansasag.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................... 4

JURISDICTIONAL STATEMENT ..................................... 10

STATEMENT OF THE CASE............................................. 11

SUMMARY OF ARGUMENT ............................................ 13

ARGUMENT ..................................................................... 17

    I.    The Governor And Attorney General Are
        Not Subject To Federal Court Jurisdiction....................... 17

        A.    Standard of Review ................................................. 17

        B.    Eleventh Amendment Immunity ............................... 18

                1.    Federal Jurisdiction Against States And
                        Their Officers In Their Official Capacities
                        Are Generally Barred ......................................... 18

                2.    The Doctrine of Ex Parte Young Sets Forth
                        A Narrow Exception ........................................... 21

                3.    The Limited Exception to Eleventh
                        Amendment Immunity Under Ex Parte
                        Young Does Not Extend to State Officials
                        Who Have No Power Or Duty To Enforce
                        The Challenged Law........................................... 24

                        a.    The Governor ............................................. 31

                        b.    The Attorney General .................................. 36

Appellate Case: 14-3084    Page: 2    Date Filed: 11/20/2014 Entry ID: 4218079

(i) Generally.................................................. 36

(ii) Attorney General's Right To
Intervene ............................................... 40

(iii) The Attorney General's
Authority To Enforce The
DTPA.................................................... 42

(iv) The Attorney General's Duty
To Defend State Actors ......................... 46

C. The Eleventh Amendment Provides No
Exception For Pre-Enforcement Review ................... 47

II. There Is No Article III Case Or Controversy
Between DRN And The State ........................... 50

CONCLUSION ...................................................... 54

CERTIFICATE OF COMPLIANCE................................... 55

CERTIFICATE OF SERVICE........................................ 56

Appellate Case: 14-3084    Page: 3    Date Filed: 11/20/2014 Entry ID: 4218079

# TABLE OF AUTHORITIES

## A.    CASES

*1st Westco Corp. v. Sch. Dist. of Philadelphia*,
6 F.3d 108 (3rd Cir. 1993)....................................................................25, 47

*281 Care Committee v. Arneson*, 638 F.3d 621
(8th Cir. 2011)......................................................................24, 25, 36, 37

*Alden v. Maine*, 527 U.S. 706 (1999)..................................................13, 19

*Anderson-Tully Co. v. McDaniel*, 571 F.3d 760
(8th Cir. 2009).................................................................................20

*Ark. Prof. Bailbondsman Licensing Bd. v. Oudin*,
348 Ark. 48, 69 S.W.3d 855 (2002)..............................................................47

*Association des Eleveurs de Canards et d'Oies
du Quebec v. Harris, 729 F.3d 937 (9th Cir. 2013)*...................................32

*Baker v. Carr*, 369 U.S. 186 (1962) ..................................................53, 54

*Baptist Health v. Murphy*, 365 Ark. 115,
226 S.W.3d 800 (2006).......................................................................43, 44

*Baptist Health v. Murphy*, 2010 Ark. 358,
373 S.W.3d 269 (2010).......................................................................23, 24

*Blatchford v. Native Village of Noatak & Circle
Village*, 501 U.S. 775 (1991) ...................................................................19

*Brown v. Mortgage Electronic Registration Systems*,
738 F.3d 926 (8th Cir. 2013)................................................................43, 44

Appellate Case: 14-3084     Page: 4     Date Filed: 11/20/2014 Entry ID: 4218079

*Children's Healthcare Is A Legal Duty v. Deters,*
92 F.3d 1412 (6th Cir. 1996)........................................................25, 26, 51

*Citizens for Equal Protection v. Bruning,*
368 F. Supp. 2d 980 (D. Neb. 2005)........................................................27

*Citizens for Equal Protection v. Bruning,*
455 F.3d 859 (8th Cir. 2006)..................................................26, 27, 28, 29

*Cox v. State*, 72 Ark. 94, 78 S.W. 756 (1904)..........................................31

*Employees of Dept. of Pub. Health & Welfare,*
*Missouri v. Dept. of Pub. Health & Welfare,*
*Missouri*, 411 U.S. 279 (1973) ..............................................................20

*Ex Parte Young*, 209 U.S. 123 (1908) ................. 14, 15, 20, 21, 22, 23, 25,
29, 31, 34, 36, 42, 50, 51

*Fitts v. McGhee*, 172 U.S. 516 (1899) ................................................21, 50

*Fulkerson v. Refunding Bd.*, 201 Ark. 957,
147 S.W.2d 280 (1941) ....................................................................33, 34

*Great Rivers Habitat Alliance v. Fed. Emergency*
*Mgmt. Agency*, 615 F.3d 985 (8th Cir. 2010)..........................................17

*Gulfco of Louisiana, Inc. v. Brantley,*
2013 Ark. 367, 430 S.W.3d 7 (2013) ......................................................44

*Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504,
33 L.Ed. 842 (1890)..............................................................................19

*Hawkins v. Governor*, 1 Ark. 750 (1839) ...........................................34, 35

*Holloway v. Ark. State Bd. of Architects*,
79 Ark. App. 200, 86 S.W.3d 391 (2002) ................................................46

5

Appellate Case: 14-3084    Page: 5    Date Filed: 11/20/2014 Entry ID: 4218079

*Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002) ............................45

*Jones v. U.S.*, 727 F.3d 844 (8th Cir. 2013)................................................17

*Lake View Sch. Dist. No. 25 of Phillips Cty. v. Huckabee*, 340 Ark. 481, 10 S.W.3d 892 (2000) ................................35, 36

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992)..........................26, 51

*Marine Equipment Mgmt. Co. v. U.S.*, 4 F.3d 643 (8th Cir. 1993)................................................................................51, 53

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) .......................25, 51

*Missouri Protection and Advocacy Services v. Carnahan*, 499 F.3d 803 (8th Cir. 2007) ............................................41, 42

*Mobil Oil Co. v. Atty. Gen'l of Va.*, 940 F.2d 73 (4th Cir. 1991)....................................................................42

*Natural Gas Co. v. Ark. Pub. Serv. Comm'n*, 25 Ark. App. 115, 752 S.W.2d 766 (1988) ................................................39

*Northeast Florida Ch. of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993) ................................27

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ...................15, 22, 25, 48

*Parker v. Murry*, 221 Ark. 554, 254 S.W.2d 468 (1953)................................................................................39

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ..................................................................................19

*Pennoyer v. McConnaughy*, 140 U.S. 1 (1891) ........................................21

Appellate Case: 14-3084     Page: 6     Date Filed: 11/20/2014 Entry ID: 4218079

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013)..............................26

*Reproductive Health Services of Planned Parenthood v. Nixon*, 428 F.3d 1139 (8th Cir. 2005)...................25, 37, 41

*Shell Oil v. Noel*, 608 F.2d 208 (1st Cir. 1979) ........................................25

*Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.,* 980 F.2d 437 (7th Cir. 1992)...........................................................26

*Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26 (1976) ..................................................................................53

*Skalla v. Canepari*, 2013 Ark. 415, 430 S.W.3d 72 (2013) ....................44

*Smyth v. Ames*, 169 U.S. 466 (1898) .................................................21, 22

*South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) ..........................................24, 25

*State ex rel. Williams v. Karston*, 208 Ark. 703, 187 S.W.2d 327 (1945)............................................................................40

*State v. D.S.*, 2011 Ark. 45, 378 S.W.3d 87 (2011)..................................33

*State v. McDiarmand*, 27 Ark. 176 (1871) ........................................34, 35

*Summit Med. Assocs. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999)..................................................................................26, 48

*Tennessee Gas Transmission Co. v. State ex rel. Attorney General*, 232 Ark. 156, 335 S.W.2d 312 (1960) .......................33

*Weiss v. Maples*, 369 Ark. 282, 253 S.W.3d 907 (2007) ..........................33

*Zanders v. Swanson*, 573 F.3d 591 (8th Cir. 2009)..................................53

Appellate Case: 14-3084     Page: 7     Date Filed: 11/20/2014 Entry ID: 4218079

## B.  STATUTES

Ark. Code Ann. § 4-88-107 ................................................................. 43, 44

Ark. Code Ann. § 4-88-113 ..................................................................... 43

Ark. Code Ann. § 12-12-1806............................................................. 14, 23

Ark. Code Ann. § 12-12-1807 ............................................................ 14, 23

Ark. Code Ann. § 16-21-103...................................................................... 39

Ark. Code Ann. § 25-16-702...................................................................... 38

Ark. Code Ann. § 25-16-703...................................................................... 39

Ark. Code Ann. § 25-16-704...................................................................... 39

Ark. Code Ann. § 25-16-705...................................................................... 39

Ark. Code Ann. § 25-16-706...................................................................... 39

Ark. Code Ann. § 25-16-707...................................................................... 39

Ark. Code Ann. § 25-16-708...................................................................... 39

Ark. Code Ann. § 25-16-709...................................................................... 39

## C.  OTHER AUTHORITIES

Ark. Const. Art. VI, § 1............................................................................. 38

Ark. Const. Art. VI, § 2................................................................... 30, 31, 38

8

Ark. Const. Art. VI, § 15....................................................................31

Cal. Const. Art. 5, § 1 ......................................................................32

Minn. Stat. Ann. § 8.01 ...................................................................25

Neb. Const. Article IV, § 6...............................................................28

Neb. Rev. Stat. § 84-731 ..................................................................28

U.S. Const. Amendment 11 ..............................................................19

Appellate Case: 14-3084    Page: 9    Date Filed: 11/20/2014 Entry ID: 4218079

## JURISDICTIONAL STATEMENT

The jurisdiction of the District Court is the only issue on appeal in this case. For the reasons set forth in the district court's order, and in this brief, the Appellees disagree with the Appellants' contention that the district court has jurisdiction over this matter. By virtue of the Eleventh Amendment to the United States Constitution the district court may not exercise jurisdiction over the Arkansas Governor and Attorney General to determine the constitutionality of a statute that neither may enforce.

The Appellees agree that this Court has jurisdiction to hear the Appellants' appeal of the district court's order dismissing their complaint.

Appellate Case: 14-3084   Page: 10   Date Filed: 11/20/2014 Entry ID: 4218079

## STATEMENT OF THE CASE

Appellants' Statement of the Case makes two material representations about which the Appellees disagree. First, in the course of describing the Arkansas Automatic License Plate Reader Act the Appellants contend that the Governor and Attorney General have "explicitly disclaimed any knowledge of why the statute was enacted." Appellants' brief at 5. Although not material to the issues on appeal, Appellees are compelled to note that neither the Governor nor the Attorney General has disclaimed knowledge, and in fact neither testified. The transcript page cited reflects only that their attorney did not personally know, when asked by the District Court, the reason the Act was proposed and enacted. PI Tr. at 102.

Second, the Appellants represent that it is "undisputed – and the District Court expressly found – that, as a result of the Act, Appellants have been forced in Arkansas to cease engaging in constitutionally protected speech that is vital to their operations." Brief at 6. It is true that Appellant Digital Recognition Network says it is no longer conducting business in Arkansas because of the Act. But it is neither undisputed nor established that the use of an

11

Automatic License Plate Reader in the manner prohibited in the Act is "constitutionally protected." There was no such finding by the District Court.

This case brings to the court a facial challenge to jurisdiction based upon the allegations of the complaint. The Appellees' references to testimony and other evidence related to their motion for preliminary injunction are inappropriate and irrelevant. For this reason the Appellees will not address further disagreements with the Appellants' Statement of the Case.

Appellate Case: 14-3084   Page: 12   Date Filed: 11/20/2014 Entry ID: 4218079

## SUMMARY OF THE ARGUMENT

The issue on appeal is whether, on the facts stated in the complaint, the district court was without jurisdiction to hear the Appellants' lawsuit against the Governor and Attorney General of Arkansas in their official capacities — even though neither official had the power, duty, or authority to enforce the challenged law and neither threatened to enforce it. The district court held that the Eleventh Amendment to the United States Constitution barred the court from exercising jurisdiction.

The district court's ruling was correct. The Eleventh Amendment, and the principles of sovereignty embodied in its interpretation, are fundamental parts of the structure of the system of government in the United States and the sovereignty "inheres in the system of federalism established by the Constitution." *Alden v. Maine*, 527 U.S. 706, 730 (1999). The Appellants, Digital Recognition Network, Inc. and Vigilant Solutions, Inc. (collectively, "DRN"), ask this Court to disregard the Eleventh Amendment because they are concerned that they will be sued in the future — not by the Attorney General or Governor but, instead, by a private citizen for damages

13

under the Arkansas Automatic License Plate Reader Act, codified at Ark. Code Ann. § 12-12-1801, et seq. (the "Act" or the "ALPR Act"). The Act grants only two remedies:  the first is essentially an exclusionary rule for the use of unlawfully acquired data; the second is a cause of action in favor of a person who is "injured in his or her business, person or reputation" by a violation of the Act.  Ark. Code Ann. §§12-12-1806 and 12-12-1807.  No criminal penalty, cause of action, right, or remedy against any private party is granted to the State of Arkansas or any of its officials, agencies, or political subdivisions.

DRN contends that the Governor and the Attorney General (sometimes collectively referred to as "the State") should be subject to suit in their official capacities under the limited Eleventh Amendment exception referred to as the *Ex parte Young* or *Young* rule.  They argue that the *Young* rule requires only "some connection" to the challenged law and that the general powers and duties of these officers provide the necessary connection.

14

The e*n banc* decision in *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001), refutes Appellant's argument and validates the district court's decision:

> As we have pointed out, the *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required "connection," but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. For a duty found in the general laws to constitute a sufficient connection, it must "include the right and the power to enforce the statutes of the state, including, of course, the act in question ..." Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute.

*Id.* at 416-417 (internal citations omitted).

Here, neither the ALPR Act nor any other Arkansas law gives the Governor or the Attorney General the power or authority to enforce the Act against DRN. And neither has acted (or threatened to take action) against DRN. Consequently, the district court correctly found that the Eleventh Amendment does not permit it to exercise jurisdiction over the State in this case.

15

Likewise, there is no case or controversy between DRN and the State. The complaint does assert potential harm that could support standing to challenge the Act. But in the absence of enforcement or a credible threat of enforcement by the Governor or Attorney General, there is no case or controversy between these parties, and thus Article III jurisdiction is absent. The district court correctly found that the State is not subject to jurisdiction, and its order dismissing the complaint should be affirmed.

16

# ARGUMENT

## I.  THE GOVERNOR AND ATTORNEY GENERAL ARE NOT SUBJECT TO FEDERAL COURT JURISDICTION.

### A.  Standard of Review.

As an appeal of the dismissal of a complaint for lack of subject matter jurisdiction, the issues pertinent to jurisdiction are reviewed *de novo*. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010).  DRN's brief incorrectly implies that the State has the burden of establishing jurisdiction. The burden of establishing federal jurisdiction is on the Appellants, DRN and Vigilant. *Id.*

DRN's principal brief frequently refers to affidavits, evidence, or argument submitted on its motion for preliminary injunction, as well as factual allegations and suppositions not contained within its complaint. The motion to dismiss was based entirely upon the allegations of the complaint, however.  J.A. 29-44.  As a facial challenge to jurisdiction, the "the court restricts itself to the face of the pleadings." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013).  The factual allegations in the pleadings are to be accepted as true and viewed in the light most favorable to DRN. *Great Rivers*, 615 F.3d at 988.  DRN is not entitled

17

to supplement its deficient complaint through its brief in this case or through the filings or evidence submitted in support of its motion for preliminary injunction.

## B. Eleventh Amendment Immunity

### 1. Federal Jurisdiction Against States And Their Officers In Their Official Capacities Are Generally Barred.

The district court's analysis correctly began by recognizing the general rule that "lawsuits against states and official capacity claims against state officials are barred, unless a state consents or Congress has abrogated the immunity." J.A. 139. The issue on appeal is not DRN's right to track and record the locations of citizen's vehicles, or whether the images and data collected are "speech." Despite the repeated references to "Hobson's choice," this case has nothing to do with illusory choices. It is about the Eleventh Amendment to the United States Constitution and the fundamental principles that underlie the relationship between the states and the federal government:

> The principle of sovereign immunity embodied in the Eleventh Amendment is an integral part of our system of government. This separate and distinct structural principle is not directly related to the scope of the judicial power

18

established by Article III, but inheres in the system of federalism established by the Constitution.

*Alden v. Maine*, 527 U.S. 706, 730 (1999).

The Eleventh Amendment provides that:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. Amendment 11. The Amendment is broader than appears at first blush. The Supreme Court has explained that:

Despite the narrowness of its terms, since *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty, and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the "plan of the convention."

*Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 779 (1991) (internal citations omitted). This rule applies regardless of the nature of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Amendment also

Appellate Case: 14-3084    Page: 19    Date Filed: 11/20/2014 Entry ID: 4218079

bars official capacity claims against state officials. *Anderson-Tully Co. v. McDaniel*, 571 F.3d 760 (8th Cir. 2009).

Contrary to DRN's claim, the issue here is about *where* DRN might present its objections to the Act, not *whether* there is a forum for its complaints.

> The issue is not the general immunity of the States from private suit—a question of the common law—but merely the susceptibility of the States to suit before federal tribunals. Because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of the federal judicial power has long been considered to be appropriate in a case such as this.

*Employees of Dep't of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 291-94 (1973).

DRN's brief never directly addresses the Eleventh Amendment issue. Instead, it suggests that the State must prove it is *not* subject to suit, and it asserts that a narrow exception, commonly referred to as the *Ex parte Young* rule, means that some state official will always be subject to suit in federal court when the constitutionality of a state law is at issue. In their view, *Ex parte Young* is simply about choosing the right state official to sue. *See* DRN brief at 23-24.

20

The *Young* rule is not a simple "proper party" concept.  It is a narrow exception to the general rule of sovereign immunity.  Neither the facts alleged in the complaint nor the applicable law supports the view that *Young* allows federal courts to hear this lawsuit against state officials for the purpose of challenging a law that the officials have no power to enforce (and have not attempted or threatened to enforce).

## 2. The Doctrine of Ex Parte Young Sets Forth a Narrow Exception.

In the late Nineteenth Century, the Supreme Court was presented with a number of cases that challenged the jurisdictional bar of the Eleventh Amendment and states' common law sovereign immunity.   In an effort to accommodate the perceived need to provide a federal forum for the vindication of rights based on the U.S. Constitution, the Court crafted a narrow exception.  *See, e.g., Fitts v. McGhee*, 172 U.S. 516 (1899); *Smyth v. Ames*, 169 U.S. 466 (1898); *Pennoyer v. McConnaughy*, 140 U.S. 1 (1891).   In the *Young* case, the Court summarized the general rule as follows:

> The various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or

21

> criminal nature, to enforce against parties affected an
> unconstitutional act, violating the Federal Constitution, may
> be enjoined by a Federal court of equity from such action.

*Ex parte Young*, 209 U.S. 123, 155-156 (1908). The rule is based on a fiction that a "suit against individuals for the purpose of preventing them as officers of a state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of [the Eleventh] amendment." *Smyth*, 169 U.S. at 518-19. The fiction breaks down, however, where the state official sued does not have "at least the ability to engage in the unconstitutional conduct." O*kpalobi*, 244 F.3d at 421. That is the circumstance at issue in this case.

DRN's argument ignores (or waters down) *Young*'s requirement that the state official who has been sued have some connection with *enforcement* of the disputed statute and that the official have taken enforcement action or threatened to take action. DRN suggests that nothing more than a general duty to enforce the laws of the state is required — what they characterize as "some connection." While the phrase "some connection" can certainly be found in *Young* and in cases applying the *Young* rule, DRN removes the phrase from the operative

22

verb that completes the rule. The required connection, as stated in *Young*, is "some connection with *the enforcement* of the act." *Young*, 208 U.S. at 157 (emphasis added). *Young* explained that the duty of enforcement need not appear in the challenged law, but the *Young* rule requires there be a connection with actual *enforcement* of the act, not just "some connection" with the law generally speaking. *Id.*

It is undisputed that the Act at issue in this case provides no criminal penalty, and it conveys no enforcement right or remedy to any state official, much less the Governor or Attorney General. The only cause of action created is one for damages, which is granted only to an individual who has been harmed. Ark. Code Ann. § 12-12-1807. The only other remedy granted is an exclusionary rule, providing that where disclosure of data would be a violation of the Act neither the data nor information derived from it may be used before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision of the state. Ark. Code Ann. § 12-12-1806. Because the Act creates a cause of action and specifies a remedy, the Arkansas courts will not interpret it to include additional remedies. *See Baptist Health v. Murphy*, 2010 Ark. 358, 373

23

S.W.3d 269, 288 (2010). Thus, there is no prospect of an implied cause of action in favor of the State.

The threshold issue, then, is not (as DRN suggests) about *which* state official to sue, but whether any state official may be sued. Here, the answer is "no" because no state official has any power or authority to enforce the Act.

### 3. The Limited Exception To Eleventh Amendment Immunity Under Ex Parte Young Does Not Extend To State Officials Who Have No Power Or Duty To Enforce The Challenged Law.

DRN argues that the requirement of a connection between the official sued and enforcement of the challenged law is really just a way to make sure the right state official is sued. *See* DRN brief at 12, 23-24. In support of this proposition, DRN cites *281 Care Committee v. Arneson,* 638 F.3d 621 (8th Cir. 2011), and *South Carolina Wildlife Federation v. Limehouse,* 549 F.3d 324 (4th Cir. 2008). Neither case holds or implies such a broad rule.

In *South Carolina Wildlife*, the issue was whether the director of the state Department of Transportation, who was "deeply involved in the preparation of the challenged FEIS and the procurement of permits to proceed with construction," was a proper party to a suit challenging

24

the FEIS, or federal environmental impact statement, related to construction of a bridge by the department. *South Carolina Wildlife Federation*, 549 F.3d at 333-34. In *281 Care Committee*, the challenged law created a criminal penalty, and a separate law permitted the Attorney General to become involved in a criminal prosecution of the plaintiffs in any case "wherein the state is directly interested; also in all civil causes of like nature." Minn. Stat. Ann. § 8.01; *281 Care Committee*, 638 F.3d 621. Neither case involved a circumstance, like this case, in which a plaintiff sued the governor or attorney general simply because of the nature of their offices or their general duties.

The federal courts of appeal (including the Eighth Circuit Court of Appeals) have consistently recognized that the *Young* rule requires a connection between the official sued and *enforcement* of the law being challenged – not just "some connection to the law," as suggested by DRN. *Shell Oil v. Noel*, 608 F.2d 208 (1st Cir. 1979); *Okpalobi*, 244 F.3d 405; *Reproductive Health Services of Planned Parenthood v. Nixon*, 428 F.3d 1139 (8th Cir. 2005); *1st Westco Corporation v. School District of Philadelphia, 6 F.3d 108 (3rd Cir. 1993); McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010); *Children's Healthcare is a Legal Duty v. Deters*,

Appellate Case: 14-3084    Page: 25    Date Filed: 11/20/2014 Entry ID: 4218079

92 F.3d 1412 (6th Cir. 1996); *Long v. Van de Kamp,* 961 F.2d 151 (9th Cir. 1992); *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013); *Summit Medical Associates v. Pryor*, 180 F.3d 1326 (11th Cir. 1999); *see also, Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.,* 980 F.2d 437, 441 (7th Cir. 1992).

DRN claims that this Court's opinion in *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006), establishes a broad right to sue a governor or attorney general to challenge the constitutionality of a statute, regardless of whether either has power to enforce or administer the challenged law. *Bruning* did not so hold. Indeed, such a rule would be directly contrary to the rule applied by the Supreme Court for more than 100 years.

The issues in the *Bruning* case did not relate to a law regulating business practices and providing private parties a civil remedy; instead, the case addressed an alleged barrier to the legislative process erected by the state constitution, whether the plaintiffs had demonstrated an Article III "injury," and whether the Nebraska Governor and Attorney General were sufficiently connected to enforcement of the barrier to satisfy the case or controversy requirement of Article III. Only the

26

State of Nebraska had the power to withhold or grant the rights at issue in that case. The law provided no private rights or remedies.

The *Bruning* plaintiffs challenged a Nebraska constitutional amendment that prohibited same sex marriage. *Id.* at 863. The plaintiffs argued the constitutional amendment denied them an "equal opportunity to convince members of the Nebraska Unicameral that same-sex relationships deserve some of the legal protections afforded to other relationships." *Citizens for Equal Protection v. Bruning*, 368 F. Supp. 2d 980, 985 (D. Neb. 2005), *rev'd and remanded*, 455 F.3d 859.

Nebraska contended that the plaintiffs had no standing because they had suffered no injury. Citing *Northeast Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993), this Court found that the barrier to the legislative process erected by the constitutional amendment supported standing.

*Bruning*'s discussion of the Eleventh Amendment issues and pertinent facts was brief, likely because the argument was first presented on appeal in an *amicus* brief and was not advanced by the State. *Bruning*, 455 F.3d at 864. The *amicus* argument contended that

27

the plaintiffs' claims were not justiciable because neither the governor nor the attorney general was responsible for the alleged injury.

In its treatment of the *amicus* argument, this Court initially noted that the Nebraska Governor and Attorney General had "broad powers to enforce the State's Constitution and laws," citing Nebraska Constitution, Article IV, § 6, and Neb. Rev. Stat. § 84-731.[1] This Court concluded that failure of a bill to advance out of committee after the attorney general opined that the bill would violate the challenged constitutional amendment "confirms that these broad powers include policing compliance with this constitutional amendment." *Bruning*, 455 F.3d at 864.

It was the defendants' demonstrated power in the legislative process, combined with their specific statutory duties to *implement and enforce* Nebraska laws and the constitution – not potential judicial enforcement against the plaintiffs – that supported the plaintiffs' argument that Nebraska's Governor and Attorney General could be

---

[1] The cited statute *required* the Governor to order agency implementation of all laws. It also *required* that, upon order of the Governor, the Attorney General file suit against any non-compliant agency to compel implementation of the law.

28

responsible in some measure for denying them access to the legislative process.

The *Bruning* opinion does not mention the Eleventh Amendment issue, excepting one sentence in the section titled "Jurisdiction Issues:"

> Although one may question whether enjoining these two state officers would fully redress Appellees' alleged injuries, we agree with the concession implicit in the State's decision not to press this issue—the Governor and the Attorney General have "some connection with the enforcement" of § 29 and therefore this suit for equitable relief falls within the exception to the State's Eleventh Amendment immunity established in *Ex parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This satisfies the case or controversy requirement of Article III.

*Bruning*, 455 F.3d at 864.  Thus, *Bruning* did not expand the *Young* rule.  It examined *standing* in an atypical circumstance where the plaintiffs sought access to a right that only the state could confer, and it found that officials who were charged with enforcing the challenged law to the detriment of the plaintiffs were properly before the Court.

DRN's complaint is that it holds existing rights that are impaired by the ALPR Act and that it will be harmed by enforcement of the Act. But the Act grants no right or remedy to any state official or agency, and neither the Governor nor the Attorney General has any other power, authority, or right to enforce the Act.

Appellate Case: 14-3084     Page: 29     Date Filed: 11/20/2014 Entry ID: 4218079

The complaint, which must in the first instance allege facts supporting jurisdiction,[2] asserts no facts demonstrating a connection between the State and enforcement of the Act. The complaint does not allege facts demonstrating that either defendant, much less the State of Arkansas as an entity, has any right, remedy, or power that might be exercised to enforce the Act against DRN. Nor does the complaint identify a threat of enforcement or actual enforcement action taken by the Governor or the Attorney General. J.A. 6-20. In 57 numbered paragraphs, the complaint has only this to say about the Governor and Attorney General: (1) the Governor is responsible for execution and enforcement of the State's laws (citing a provision of the Constitution that does not convey such duties)[3]; (2) the Attorney General's web site proclaims that he is the State's chief law enforcement officer and that he is committed to protecting and defending the interests of all Arkansans. J.A. 8. The complaint states no other facts, or even conclusions, addressing the power, authority, or inclination of Arkansas' Governor or Attorney General to enforce the Act against DRN. Consequently, the complaint fails to establish any connection between

---

[2] F.R.Civ.P. 8(a)(1).
[3] Ark. Const. Art. VI, §2

Appellate Case: 14-3084    Page: 30    Date Filed: 11/20/2014 Entry ID: 4218079

the State and enforcement of the Act, or any threat of enforcement that might create a controversy between the parties to this case. The absence of such a connection, threat, or action means not only that the *Ex parte Young* exception does not apply, but also that as between these parties the complaint does not demonstrate the existence of a case or controversy as required by the Article III of the United States Constitution.

### a.    **The Governor**.

The office of the Arkansas Governor is one with limited powers, despite the Constitution's proclamation that the Governor holds the "supreme executive power of this State." Ark. Const. Art. VI, § 2. For example, the Governor's veto can be overridden by simple majority vote of the General Assembly. Ark. Const. Article VI, § 15. The Governor's authority generally flows only from the Constitution and specific legislative grants of power. *See, e.g., Cox v. State*, 72 Ark. 94, 78 S.W. 756 (1904) (finding that the Governor has no inherent power of appointment except for that provided in the Constitution). DRN has pointed to no statutory or constitutional power in the Governor to enforce the Act or any similar law against private parties.

31

The Governor's duties are stated generally in Article VI of the Arkansas Constitution, and additional duties and authority are found throughout the Arkansas Code. No legislative act or constitutional provision prescribes either a general power to prosecute violations of the law (whether by criminal prosecution or civil suit) or a specific power to enforce laws which, like the Automatic License Plate Reader System Act, grant no right or remedy to the State.

A governor is not subject to suit where the only connection to enforcement of the challenged law is a general duty to enforce state law. *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013). *Association des Eleveurs* found that the California Governor's general duty to enforce the law did not subject him to jurisdiction. Like Arkansas, California's constitution includes the general language, relied upon by DRN here, providing that "[t]he supreme executive power of this State is vested in the Governor" and that "[t]he Governor shall see that the law is faithfully executed." Cal. Const. Art. 5, § 1.

DRN contends that the general "supreme executive power language" of the Constitution confers upon the Governor the power and

responsibility to enforce the laws. But there is no reported decision giving this provision of the Arkansas Constitution the interpretation argued by DRN. In fact, the few reported cases make it clear that the Governor's "executive power" is not all encompassing. For example, in *Tennessee Gas Transmission Co. v. State ex rel. Attorney General*, 232 Ark. 156, 335 S.W.2d 312 (1960), the Arkansas Supreme Court found that the Governor, Attorney General, and Secretary of State had no authority, absent legislative authorization, to grant pipeline easements and permits for a gas pipeline across the Mississippi river.

To achieve the illusion of a power and duty to "enforce all laws," DRN cobbles together a patchwork of cases that do not address the Governor's powers or responsibilities under the current Constitution. None of the modern cases cited by DRN address in any way the Governor's power to enforce state laws against private parties.

The cases cited by DRN principally describe basic principles of the separation of powers doctrine and the general duty of executive agencies to implement and enforce the law. *State v. D.S.,* 2011 Ark. 45, 378 S.W.3d 87 (2011); *Weiss v. Maples*, 369 Ark. 282, 253 S.W.3d 907 (2007); *Fulkerson v. Refunding Board*, 201 Ark. 957, 147 S.W.2d 280

Appellate Case: 14-3084     Page: 33     Date Filed: 11/20/2014 Entry ID: 4218079

(1941); *State v. McDiarmand*, 27 Ark. 176 (1871); *Hawkins v. Governor*, 1 Ark. 750 (1839).

With no citation to authority, DRN contends that the responsibilities of the "executive branch" to implement the law are also the responsibilities of the Governor and Attorney General. This argument ignores not only the scope of the *Young* rule, but also its rationale. Vicariously imputing the responsibilities of an executive agency to any superior executive official, regardless of the official's actual authority to enforce, effectively eliminates the Y*oung* requirement that the official sued have a connection to enforcement of the challenged law. Moreover, even if DRN was correct, it does not help DRN establish jurisdiction because no executive agency or official has any connection whatsoever to the enforcement of the Act – and thus no duties or authority to impute to the Governor or Attorney General.

Although decided under Arkansas' 1836 and 1868 constitutions (rather than the current Constitution of 1874), the *Hawkins* and *McDiarmand* cases cited by DRN refer to two general principles that further explain why the Governor is not subject to suit here. In *Hawkins*, the Court refused to ascribe to the Governor duties not

34

prescribed by law. *Hawkins*, 1 Ark. 750. *McDiarmand* instructs that, apart from the duties and powers described in the Constitution or at common law, executive officers generally hold only the powers and duties prescribed by the legislative branch. *McDiarmand*, 27 Ark. 176

DRN's last contention is that the Governor has the "the power to direct the Attorney General's handling of constitutional litigation," and that this somehow gives the Governor the power to enforce the Act through the Attorney General. This argument relies upon the incorrect assumption that the Attorney General has the power, in the first instance, to enforce the Act against DRN. It is also premised on mistaken application of one fact related in *Lake View Sch. Dist. No. 25 of Phillips Cty. v. Huckabee*, 340 Ark. 481, 490, 10 S.W.3d 892, 897 (2000). DRN's citation to *Lakeview* appears to refer to the following sentence: "Tim Humphries of the Attorney General's office stated that the Governor directed the Attorney General to 'pursue with the settlement.'" *Id.* DRN confuses the Attorney General's role as an attorney for an occasional client, the Governor, with the Attorney General's independent powers as a constitutional officer. In *Lakeview*, the Attorney General was acting the attorney for the Governor and

35

other executive branch officials described in the opinion, not a party.  It is not surprising that, as attorney for the Governor, the Attorney General would follow his client's instructions. The *Lakeview* case does not address, imply, or hold that the Governor has any power to "control" the Attorney General's acts as attorney general.  In fact, there is no such authority or power.

Finally, the complaint in this case does not assert that the Governor has taken action or threatened to take action against DRN. While a part of the basic case or controversy jurisdictional requirement, this is also a fundamental element of the *Ex parte Young* rule. *Young*, 209 U.S. at 155-156.  Even if the Governor had the power to take action against DRN, the absence of action or an enforcement threat means he is not subject to suit.

### b.    The Attorney General.

#### (i).    Generally.

Each instance in which an attorney general or governor has been found to be properly sued has been based on state laws that expressly convey enforcement authority that could be used against the plaintiff. For example, in *281 Care Committee v. Arneson*, the challenged act

36

included criminal penalties. *281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011). Finding the attorney general to be a proper party, the Court noted that Minnesota law permitted the Attorney General to become involved in a criminal prosecution under the act, that the Attorney General was designated to defend the board formed to determine civil penalties under the challenged act, and that the Attorney General appeared to have the ability to file civil actions to enforce the act. In *Reproductive Health Services* the Court found that the Missouri Attorney General might be a potentially proper party because the attorney general could be authorized by the governor or a trial court to enforce the criminal penalties contained in the law. *Reproductive Health Services of Planned Parenthood*, 428 F.3d 1139. This Court, however, vacated a preliminary injunction against the Missouri Attorney General, finding that the theoretical enforcement power was absent where neither the governor nor a trial court had directed the attorney general to take enforcement action. "Thus, extending the grant of preliminary injunctive relief to this defendant in his official capacity looks very much like the impermissible grant of federal court relief against the State of Missouri." *Id*. at 1145.

Appellate Case: 14-3084    Page: 37    Date Filed: 11/20/2014 Entry ID: 4218079

As already noted, the Act does not provide *any* penalty or remedy that might be enforced by the State or any official or political subdivision of the State. Nor does the Attorney General hold more general powers to enforce Arkansas statutes that grant no right or remedy to the State.

As with the Governor, DRN attempts to transform unrelated rights of the Attorney General, and his duties as an attorney defending and advising the State and state agencies, into an overarching power to file suit, as a party, against anyone who violates any Arkansas law.

The Attorney General has no broad constitutional or statutory enforcement mandate. The Arkansas Constitution establishes the office of Attorney General, but does not describe its duties. Ark. Const. Art. VI, §§ 1, 2. The law that generally establishes the Attorney General's duties charges the Attorney General with representing state officials, agencies and departments, and it authorizes the Attorney General to initiate civil lawsuits under state and federal environmental protection statutes. Ark. Code Ann. § 25-16-702. The Attorney General is charged with defending the interests of the State before all federal courts, may issue writs of quo warrant, may issue subpoenas in

38

litigation in which the interests of the State are involved, may issue opinions at the request of certain officials, and is authorized to bring suit against officers of the State who are indebted to the State. Ark. Code Ann. §§ 25-16-703 to 25-16-709.

The Attorney General does not hold an inherent power to prosecute violations of the State's criminal laws. Criminal law violations are prosecuted by the prosecuting attorneys for the respective counties. Ark. Code Ann. § 16-21-103. Thus, even if the Act provided for criminal penalties, the Attorney General would have no authority to enforce it without a separate grant of authority.

The Arkansas Attorney General also holds the powers generally ascribed to an attorney general at common law, but the Attorney General's duties and authority pertaining to rights and remedies prescribed by the General Assembly are defined and limited by statute. *See Parker v. Murry*, 221 Ark. 554, 559, 254 S.W.2d 468, 471 (1953) (finding that Attorney General was not entitled to intervene in tax enforcement action brought by a state agency represented by its own counsel). *See also, Natural Gas Co. v. Arkansas Pub. Serv. Comm'n*, 25 Ark. App. 115, 118, 752 S.W.2d 766, 767 (1988) (finding that statutory

39

power to represent all classes of utility ratepayers does not give the Attorney General veto power over the methodology employed by the Public Service Commission in setting rates). The Attorney General's common law authority has been applied to matters that were within the purview of the attorney general at common law. *See, e.g., State ex rel. Williams v. Karston*, 208 Ark. 703, 709, 187 S.W.2d 327, 330 (1945) (finding that the Attorney General held the power at common law to seek an injunction against a public nuisance - a gambling operation). There are no Arkansas cases recognizing in the attorney general a common law power to enforce any Arkansas law against any person.

### (ii). Attorney General's Right to Intervene.

DRN argues that the Attorney General's right to intervene in suits challenging the constitutionality of an Arkansas statute satisfies the requirement that the Attorney General have "some connection" with enforcement of the challenged law. DRN speculates that it is inevitable that the Attorney General will rise to the defense of the Act if its constitutionality is challenged in private litigation. This speculation is not supported by evidence in the record, or even by allegations in the

40

Complaint.[4] In any event, DRN's argument misses the point. The Eleventh Amendment is jurisdictional; it does not permit suit against the State simply because it is a more expedient way to resolve a constitutional question. State officials may subject themselves to jurisdiction if they determine the state's interest is substantial enough to do so, but they may not be involuntarily subjected to jurisdiction in a federal forum.

DRN suggests that two cases arising out of Missouri, *Reproductive Health Services* and *Missouri Protection* and *Advocacy Services v. Carnahan,* support jurisdiction in this case. Apart from numerous other significant distinctions, one thing stands out: In each instance, the law imposed a potential criminal penalty. In *Reproductive Health Services* the challenged statute included a criminal penalty and the potential, although remote, for the Attorney General to participate in a prosecution. *Reproductive Health Services,* 428 F.3d 1139. Similarly, in *Missouri Protection and Advocacy*, the law provided for criminal penalties in the event a person ineligible to vote knowingly attempted

---

[4]   In truth, the Attorney General receives many dozens of notices of constitutional challenges in private litigation every year and rarely takes action on them.

41

to vote.  The suit challenged a statutory disqualification from voting. *Missouri Protection and Advocacy Services v. Carnahan,* 499 F.3d 803 (8th Cir. 2007).  DRN's claim - namely, that these cases provide for jurisdiction where there is any possibility of enforcement by the Attorney General - confuses enforcement of a criminal statute(which confers rights upon the state) with official discretion to defend the constitutionality of a law that grants no rights to the state.

DRN claims that the *Mobil Oil* case holds the Attorney General's right to intervene, by itself, creates the connection to enforcement required by the *Young* rule. In fact in *Mobil* the challenged law provided for civil penalties and that "the Attorney General may investigate and bring an action in the name of the Commonwealth to enjoin any violation …" *Mobil Oil,* 940 F.2d at 75.  In *Mobil* the Attorney General asserted he was protected from suit because, despite the power to enforce, he had not threatened to enforce the law.

### (iii). The Attorney General's authority to enforce the DTPA.

In an argument not presented to the district court and not mentioned in the complaint, DRN now claims that the Arkansas Deceptive Trade Practices Act ("DTPA") gives the Attorney General the

42

power to enforce the Act against DRN.  Surprisingly, in its effort to fit within the scope of the DTPA, DRN seems to concede that its business might be an "unconscionable practice" that gives rise to DTPA liability. It also asserts, also for the first time, that the Attorney General's common law right to seek an injunction against a "public nuisance" creates the power to enforce the Act.

The section of the DTPA cited by DRN prohibits "unconscionable and deceptive trade practices," and it declares such practices to be unlawful.  Ark. Code Ann. § 4-88-107(a).  The statute includes a "residual" provision that prohibits "engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code Ann. § 4-88-107(a)(10).  The DTPA gives the Attorney General the right to seek an injunction and civil penalties to enforce the DTPA.  Ark. Code Ann. § 4-88-113.  The DTPA creates its own cause of action and does not grant to the Attorney General the power to enforce other laws.

DRN cites an Eighth Circuit case, *Brown v. Mortgage Electronic Registration Systems*, which in turn refers to an Arkansas case, *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006), for the

43

proposition that violation of any statute is an "unconscionable practice" within the meaning of the DTPA.[5] The *Baptist Health* footnote cited in *Brown* defines an "unconscionable act" under the DTPA as "an act that 'affront[s] the sense of justice, decency, or reasonableness';" it does not refer to violations of a statute as a per se violation of the DTPA. *Baptist Health,* 365 Ark. at 128, 226 S.W.3d at 811, n.6. The *Baptist Health* case does not expand the DTPA to create a cause of whenever a statute is violated. *Id.*

The Arkansas Supreme Court has never found that violation of just any statute constitutes an "unconscionable practice" under the DTPA. In fact, the Court recently confirmed that it continues to follow the definition of unconscionability referred to in footnote 6 of the *Baptist Health* opinion. *Gulfco of Louisiana, Inc. v. Brantley,* 2013 Ark. 367, 430 S.W.3d 7 (2013). In another recent case, the Court explained that the elements of a cause of action based on Ark. Code Ann. § 4-88-107(a)(10) include evidence of a "deceptive consumer-oriented act or practice which is misleading in a material respect." *Skalla v. Canepari*, 2013 Ark. 415, 430 S.W.3d 72, 81-82 (2013). There is no indication from

---

[5] 738 F.3d 926, 935 (8th Cir. 2013).

44

the facts alleged in the complaint that DRN's business is "consumer oriented." In any event, if DRN's practices potentially violate the DTPA, the right (and any remedy) would arise from the DTPA, not the ALPR Act, and would exist whether or not the ALPR Act exists or is valid.

Applying DRN's logic the Attorney General might also argue, without the ALPR Act, that DRN's activities are unconscionable because "Arkansas has a rich and compelling tradition of protecting individual privacy" and "a fundamental right to privacy is implicit in the Arkansas Constitution." *Jegley v. Picado,* 349 Ark. 600, 631-632, 80 S.W. 3d 332 (2002). If the Attorney General chose to assert such a claim, however, it would not be a claim for enforcement of the ALPR Act. Neither a declaration of invalidity nor an injunction against enforcement of the ALPR Act would affect the Attorney General's power to enforce such a claim under the DTPA.

DRN's suggestion that the Attorney General might request an injunction against DRN because its business could be a public nuisance suffers a similar fate. A common law nuisance action has no relation to the ALPR Act. If, as DRN suggests, its business might be a public

45

nuisance, a cause of action to enjoin the nuisance arises from the common law, not the ALPR Act. The validity or existence of the ALPR Act has no bearing on whether electronic license plate surveillance is a public nuisance.

**(iv). The Attorney General's Duty to Defend State Actors.**

DRN confuses the Attorney General's role as attorney with his role as Attorney General. When acting as an attorney for state officials and agencies the Attorney General holds a relationship "akin to the traditional attorney-client relationship between the Attorney General and the state officials and agencies that the Attorney General represents." *Holloway v. Arkansas State Bd. of Architects*, 79 Ark. App. 200, 215, 86 S.W.3d 391, 400 (2002). If a state agency were sued for violating the Act, the Office of the Attorney General (not necessarily the Attorney General) would defend the suit, not *enforce* the Act against violators.

The contention that the designation of the Office of Attorney General as a law enforcement agency gives the Attorney General the required connection to enforcement is a non-sequitur. Whether the law-enforcement staff employed by the Attorney General choose to use

46

ALPR technology regulated by the Act, and whether anyone claims they violated the law or constitution in doing so, has nothing to do with *enforcement* of the Act by the Attorney General against private parties like DRN — something the Attorney General has never done and can never do under the law.

DRN finally argues that the Attorney General's statutory obligation to provide written opinions upon the request of designated officials gives him the necessary connection to enforcement of the Act. Again, this argument confuses the Attorney General's role as attorney with his role as litigant and enforcer. Like private legal opinions, the opinions issued are advisory in nature; they do not have the force of law. *Arkansas Professional Bailbondsman Licensing Board v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002). "[T]he act of issuing an opinion about an abstract constitutional issue falls far short of enforcing, or threatening to enforce, a statute against a specific party." *1st Westco,* 6 F.3d at 114.

## C. The Eleventh Amendment Provides No Exception For Pre-Enforcement Review.

DRN suggests that the State must be subject to suit because DRN would otherwise risk significant liability without pre-enforcement

47

review.  Any right to such review in federal court against a state official, however, must relate to a law that the official sued may enforce.  There is no "Hobson's choice" exception to the Eleventh Amendment.

In the *Okpalobi* case, the Fifth Circuit was presented with similar circumstances when an abortion provider sued the Louisiana Governor and Attorney General challenging the constitutionality of a state law imposing tort liability on abortion providers for harm caused by an abortion.  The statute created only a private cause of action and private remedies.  The Court found that the Governor and Attorney General could not be sued because they had no connection to enforcement of the law.  *Okpalobi*, 244 F.3d 405.  The Eleventh Circuit reached a similar conclusion in *Summit Medical Associates v. Pryor,* 180 F.3d 1326 (11th Cir. 1999).  After holding that the Attorney General and District Attorney were subject to suit on a claim challenging the law's criminal penalties, the Court held that there was no jurisdiction over these state officials with respect to the plaintiffs' challenge to the private civil enforcement provisions of the statute.  *Id.* at 1341.

Appellate Case: 14-3084     Page: 48     Date Filed: 11/20/2014 Entry ID: 4218079

Simply put, the Eleventh Amendment does not permit state officials to be sued merely because it would be a more expedient means of testing the law. As the U.S. Supreme Court has explained:

> There is a wide difference between a suit against individuals, holding official positions under a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

Appellate Case: 14-3084    Page: 49    Date Filed: 11/20/2014 Entry ID: 4218079

*Fitts*, 172 U.S. at 529-530. This reasoning is cited with approval in *Young*, and it has never been repudiated by the Supreme Court. *Young,* 209 U.S. at 157.

Finally, although DRN repeatedly argues its rights will be jeopardized if it is not permitted to sue the State in federal court, the complaint does not allege facts (or even conclusions) demonstrating that there is no other forum for DRN's claims. Even though not DRN's favored process, DRN may, for example, raise its constitutional claims as a defense if it chooses to operate in Arkansas and causes injury to a citizen who sues. In this respect, DRN is in no different position than the manufacturer of a product who, by selling her products in Arkansas, risks liability under Arkansas law for an injury caused by a product defect. No exception to the Eleventh Amendment subjects a state official to suit in federal court challenging the constitutionality of the state's product liability or tort reform laws. DRN's claim is no different.

## II. THERE IS NO ARTICLE III CASE OR CONTROVERSY BETWEEN DRN AND THE STATE.

The case or controversy requirement of Article III of the United States Constitution applies in two ways in this case. First, the

50

requirement is interconnected with the *Young* rule, which requires that, in addition to a connection to enforcement of the challenged law, the official sued must have acted or threatened to act to enforce the law. *McBurney,* 616 F.3d 393; *Children's Healthcare*, 92 F.3d 1412; *Van de Kamp,* 961 F.2d 151.

More fundamentally, to establish federal jurisdiction, it was incumbent on DRN to show in its complaint that there is a live controversy between it and the State. As this Court has explained:

> Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. [citation omitted]. The case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief.

*Marine Equipment Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). To present an actual controversy sufficient to justify the exercise of jurisdiction, the threat of enforcement must have some sort of immediate coercive consequences. *Id*. at 647.

When determining the existence of a case or controversy "[t]he basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy *between parties having adverse*

51

*legal interests*, a dispute definite and concrete, not hypothetical or abstract." *Zanders v. Swanson*, 573 F.3d 591 (8th Cir. 2009) (emphasis added). Here, the complaint does not allege that either Governor Beebe or Attorney General McDaniel has taken enforcement action, or threatened enforcement action, against either Appellant or, for that matter, any entity that owns or operates an automatic license plate reader system. And, in fact, neither the Governor nor the Attorney General has taken or threatened to take enforcement action against DRN.

DRN incorrectly recites the district court's order concerning standing. DRN contends that the district court found that "Appellants have a live case or controversy with officials of the State of Arkansas." DRN brief at 21. In fact, the district court found DRN has *standing* because it has articulated a sufficiently concrete injury. J.A. 138. The district court never found that there is a controversy between these parties – only that DRN has standing to challenge the Act. J.A. 138-139.

Notably, the district court *also* found that DRN lacks standing to seek an injunction against the State because "such an injunction would

52

not prevent private parties from suing plaintiffs for violating the ALPR Act." J.A. 138-139.

The district court did find that DRN would have standing to seek declaratory relief, concluding that declaratory relief would somehow remedy the alleged injury. The State respectfully submits that the district court erred in this regard because "[t]he case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." *Marine Equipment Management*, 4 F.3d at 646. The "case or controversy" limitation of Article III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). A federal court cannot "pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Because there is no controversy between these parties, neither an injunction nor declaratory judgment is available.

Appellate Case: 14-3084    Page: 53    Date Filed: 11/20/2014 Entry ID: 4218079

DRN has not alleged or shown that either the Governor or the Attorney General has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions …"*Baker,* 369 U.S. at 204. Whether the action is one for an injunction or for declaratory relief, there is no case or controversy between these parties. While DRN may have a controversy with *someone*, it is not with the Appellees.

## CONCLUSION

The Act challenged by DRN provides only a civil remedy for actual injury against DRN and is enforceable only by a private citizen. Under these circumstances, no exception to the Eleventh Amendment permits the district court to exercise jurisdiction over the State. The district court correctly held that the Arkansas Governor and Attorney General are immune, and the order dismissing this case should be affirmed.

Respectfully submitted,

DUSTIN McDANIEL
Attorney General


By: */s/ Patrick E. Hollingsworth*
Patrick E. Hollingsworth
Arkansas Bar No. 84075
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1051
patrick.hollingsworth@arkansasag.gov


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(A)(7)(B) because it contains 8,954 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2010 in Century Schoolbook 14 –point font.

*/s/ Patrick E. Hollingsworth*
Patrick E. Hollingsworth

55

## CERTIFICATE OF SERVICE AND VIRUS SCAN

I, Patrick E. Hollingsworth, Assistant Attorney General, do hereby certify that on November 19, 2014, I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system.

I further certify that the foregoing brief has been scanned for viruses and is virus free.

*/s/ Patrick E. Hollingsworth*
Patrick E. Hollingsworth
Arkansas Bar No. 84075
Assistant Attorney General

Appellate Case: 14-3084     Page: 56     Date Filed: 11/20/2014 Entry ID: 4218079