———————————————

No. 14-3084

———————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

———————————

DIGITAL RECOGNITION NETWORK, INC.;
VIGILANT SOLUTIONS, INC.,

*Plaintiffs-Appellants,*

v.

MIKE BEEBE, *in his official capacity as Governor
of the State of Arkansas*; DUSTIN McDANIEL, *in
his official capacity as Attorney General of the
State of Arkansas*,

*Defendants-Appellees.*

————————————————————————

On Appeal from the United States District Court
For the Eastern District of Arkansas
Case No. 4:14-cv-00327-BSM

————————————————————————

**REPLY BRIEF FOR APPELLANTS**

————————————————————————————

Jane W. Duke
MITCHELL, WILLIAMS, SELIG,
   GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
Telephone:  (501) 688-8842
Facsimile:  (501) 918-7842
jduke@mwlaw.com

Michael A. Carvin
Ryan J. Watson
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
macarvin@jonesday.com
rwatson@jonesday.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

SUMMARY OF ARGUMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 5

I.  APPELLEES' POSITION WOULD FORCE APPELLANTS TO
    CENSOR THEIR SPEECH OR EXPOSE THEMSELVES TO
    CRIPPLING LIABILITY, AND LIKEWISE WOULD FORECLOSE
    PRE-ENFORCEMENT JUDICIAL REVIEW IN A STARTLING
    RANGE OF CIRCUMSTANCES ................................................................. 5

II. THE COMPLAINT IS NOT DEFICIENT .................................................... 7

III. *BRUNING* ESTABLISHES THAT THE GOVERNOR AND
     ATTORNEY GENERAL HAVE A SUFFICIENT CONNECTION
     WITH THE ACT DUE TO THEIR GENERAL AUTHORITY TO
     EXECUTE AND ENFORCE STATE LAW ............................................... 10

IV. EVEN IF A MORE SPECIFIC CONNECTION IS REQUIRED,
    APPELLEES PLAINLY HAVE SUCH A CONNECTION ...................... 16

    A.  The Attorney General's Right to Intervene ....................................... 16

    B.  The Attorney General's Right to Initiate a Direct Enforcement
        Action ................................................................................................. 20

    C.  The Attorney General's Role in Defending Suits Filed Under
        the ALPR Statute ................................................................................ 25

    D.  The Governor's Powers to Direct the Attorney General's
        Handling of ALPR Litigation ............................................................. 25

V.  APPELLANTS HAVE ARTICLE III STANDING .................................... 26

CONCLUSION ...................................................................................................... 29

CERTIFICATE OF COMPLIANCE .................................................................... 31

ADDENDUM OF STATUTES AND REGULATIONS ..................................... A1

CERTIFICATE OF SERVICE ............................................................................. A4

i

# TABLE OF AUTHORITIES

Page(s)

C<span style="font-variant:small-caps">ASES</span>

*1st Westco Corp. v. Sch. Dist. of Phila.*,
  6 F.3d 108 (3d Cir. 1993) ................................................................................14

*281 Care Committee v. Arneson*,
  638 F.3d 621 (8th Cir. 2011) .......................................................12, 18, 19, 25

*281 Care Committee v. Arneson*,
  766 F.3d 774 (8th Cir. 2014) ...........................................................................7

*Baptist Health v. Murphy*,
  226 S.W.3d 800 (Ark. 2006) ....................................................................21, 22

*Baptist Health v. Murphy*,
  373 S.W.3d 269 (Ark. 2010) ...........................................................................22

*Bradley Timberland Res. v. Bradley Lumber Co.*,
  712 F.3d 401 (8th Cir. 2013) .............................................................................8

*Brown v. Mortgage Elec. Registration Sys.*,
  738 F.3d 926 (8th Cir. 2013) ...........................................................................21

*Cipollone v. Liggett Group*,
  505 U.S. 504 (1992).........................................................................................7

*Citizens for Equal Protection v. Bruning*,
  455 F.3d 859 (8th Cir. 2006) ...................................................................*passim*

*Eastman Kodak Co. v. STWB, Inc.*,
  452 F.3d 215 (2d Cir. 2006) ............................................................................20

*Ex Parte Young*,
  209 U.S. 123 (1908).................................................................................*passim*

*Fitts v. McGhee*,
  172 U.S. 516 (1899).........................................................................................12

Appellate Case: 14-3084    Page: 3    Date Filed: 12/04/2014 Entry ID: 4222298

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Franklin v. Massachusetts*,
505 U.S. 788 (1992)...................................................................28

*Gill v. INS*,
420 F.3d 82 (2d Cir. 2005) .........................................................20

*Hutto v. Finney*,
437 U.S. 678 (1978)....................................................................12

*Jones v. United States*,
727 F.3d 844 (8th Cir. 2013) .........................................................7

*Lake View School District No. 25 v. Huckabee*,
340 Ark. 481 (2000)....................................................................26

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................8, 26

*Malvern Gravel Co. v. Mitchell*,
238 Ark. 848 (1964)....................................................................29

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................................................................28

*Missouri Protection & Advocacy Services, Inc. v. Carnahan*,
499 F.3d 803 (8th Cir. 2007) ...............................................*passim*

*Mobil Oil Corp. v. Attorney General of Va.*,
940 F.2d 73 (4th Cir. 1991) ...........................................18, 19, 29

*Nat'l Rifle Ass'n of Am. v. Magaw*,
132 F.3d 272 (6th Cir. 1997) .........................................................6

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) (*en banc*)......................................14

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ortho-McNeil-Janssen Pharms., Inc. v. State,*
432 S.W.3d 563 (Ark. 2014) ...............................................................22

*Papasan v. Allain,*
478 U.S. 265 (1986) ...........................................................................12

*Reproductive Health Services v. Nixon,*
428 F.3d 1139 (8th Cir. 2005) ....................................................*passim*

*Rockefeller v. Hogue,*
429 S.W.2d 85 (Ark. 1968) ...............................................................15

*Shell Oil Co. v. Noel,*
608 F.2d 208 (1st Cir. 1979) .........................................................23, 24

*St. Paul Area Chamber of Commerce v. Gaertner,*
439 F.3d 481 (8th Cir. 2006) .........................................................8, 27

*State ex rel. Bryant v. R&A Inv. Co.,*
985 S.W.2d 299 (Ark. 1999) ..............................................................22

*United States v. Montgomery,*
550 F.3d 1229 (10th Cir. 2008) .........................................................20

*Utah v. Evans,*
536 U.S. 452 (2002)...........................................................................28

*Women's Emergency Network v. Bush,*
323 F.3d 937 (11th Cir. 2003) ...........................................................14

*Yee v. Escondido,*
503 U.S. 519 (1992)...........................................................................20

**STATUTES**

Ark. Code Ann. § 12-12-1807(b)...........................................................7

Appellate Case: 14-3084     Page: 5     Date Filed: 12/04/2014 Entry ID: 4222298

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Amicus Br. of the State of Indiana et al., *Citizens for Equal
Protection, Inc. v. Bruning*, No. 05-2604, 2005 U.S. 8th Cir. Briefs
LEXIS 711 (8th Cir. 2005) ........................................................................ 14

Ark. Const. Art. V, § 1 (1836) ........................................................................ 16

Ark. Const. Art. V, § 10 (1836) ...................................................................... 16

Ark. Const. Art. VI, § 1 ................................................................................... 16

Ark. Const. Art. VI, § 2 ..................................................................... 9, 15, 16

Ark. Const., Art. VI, § 7 .................................................................................. 16

Ark. Const. Art. VI, § 1 (1868) ...................................................................... 16

Ark. Const. Art. VI, § 2 (1868) ...................................................................... 16

Ark. Const. Art. VI, § 5 (1868) ...................................................................... 16

*Arkansas Attorney General: Our Office—Departments*, at
http://arkansasag.gov/our-office/departments .............................................. 10

Brandeis & Warren, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) ................. 22

Federal Rule of Civil Procedure 8(a)(1) ........................................................... 7

*Statement of Attorney General on Litigation Involving the Defense of
Marriage Act*, U.S. Dep't of Justice (Feb. 23, 2011), at
http://www.justice.gov/opa/pr/statement-attorney-general-
litigation-involving-defense-marriage-act ....................................................... 25

Appellate Case: 14-3084   Page: 6   Date Filed: 12/04/2014 Entry ID: 4222298

## SUMMARY OF ARGUMENT

Appellants' opening brief established that there are three fatal flaws in the district court's ruling that the Governor and Attorney General do not have a "sufficient connection" to the Act to satisfy the Eleventh Amendment under *Ex Parte Young*, 209 U.S. 123 (1908):

(1) *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006), conclusively establishes that the Arkansas Governor's and Attorney General's general authority to enforce the State's Constitution and laws provided the requisite connection, regardless of any specific enforcement responsibilities under the Act, because *Bruning* had so held concerning Nebraska's Governor and Attorney General regarding a law they did not enforce and, contrary to the district court's unsubstantiated assertion, the powers and duties of these offices in Arkansas are materially indistinguishable from the same offices in Missouri;

(2) Assuming *arguendo* that *Ex Parte Young* requires specific enforcement responsibility, the binding precedent of *Missouri Protection & Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007), and *Reproductive Health Services v. Nixon*, 428 F.3d 1139 (8th Cir. 2005), establish that such specific responsibility exists here because the probability that the Attorney General will join an enforcement action under the Act is exponentially higher than the contingent, speculative possibility that the Attorney General would

1

become involved in enforcement of the laws at issue in those cases; and

(3)     Appellees' myopic reading of *Ex Parte Young* would unconstitutionally burden Appellants' First Amendment rights by forcing them to choose between self-censoring their constitutionally protected speech or exposing themselves to onerous civil liability by speaking.

Remarkably, Appellees *do not dispute* any of the foregoing.  First, they do not dispute that the powers of the Arkansas Governor and the Attorney General are materially indistinguishable from those in Nebraska under *Bruning*, or otherwise defend the district court's contrary assertion, thus confirming that *Bruning* controls here.  They also do not dispute that it is far more likely that the Attorney General will engage in specific enforcement activity under the Act than it was in both *Missouri Protection & Advocacy* and *Reproductive Health Services*, or otherwise deny that the Attorney General will become involved in the Act's private enforcement suits, since (as is also undisputed) the only real issue in such suits will be the Act's constitutionality.  Rather, Appellees seek to distinguish that binding precedent only on the meritless ground that different *Ex Parte Young* standards apply in criminal cases than in civil suits.  Finally, they in no way dispute that their *Ex Parte Young* argument compels Appellants to choose between exercising their First Amendment rights and ruinous liability.  They argue instead that compelling such a Hobson's Choice over core constitutional rights is somehow acceptable

Appellate Case: 14-3084     Page: 8     Date Filed: 12/04/2014 Entry ID: 4222298

because it is somehow equivalent to the tort liability risk run by those who sell *defective products*.

Accordingly, in light of Appellees' implicit concessions, it is clear that the district court's ruling is contrary to the clear holdings of three of this Court's decisions and imposes the severe burden on First Amendment rights that has led the Supreme Court and this Court to require *pre-enforcement* review of speech-burdening statutes like the Act. While that more than suffices to dispose of this case, Appellees also fail to dispute our alternative arguments or present any alternative ground for affirming the district court's ruling.

*First*, with respect to the argument that the Attorney General might sue Appellants under the Arkansas Deceptive Trade Practices Act ("DTPA"), Appellees do not contest the following points: (a) the Attorney General has the authority to file DTPA actions that challenge unconscionable practices, (b) this Court has held that unconscionable practices include violations of statutes or public policy, (c) unconscionable practices also include practices that are an affront to reasonableness, and (d) Appellees view the collection and dissemination of ALPR data as a violation of a statute, public policy, and reasonableness. Thus, particularly since this Court has correctly interpreted the scope of the DTPA, the Attorney General's power to bring a claim against Appellants' speech under that statute, standing alone, provides the requisite connection. *See infra* at § IV.B.1.

3

*Second*, Appellees do not disagree that the Attorney General can file common-law actions against alleged nuisances that invade rights on highways or otherwise injure the public health. Nor do they deny that Appellants' speech is such a nuisance. Thus, Appellants also prevail on this theory, because there is plainly no merit to Appellees' assertion that a common-law action targeting ALPR use would be unrelated to the statute banning ALPR use. *See infra* at § IV.B.2.

*Finally*, Appellees' newly-raised or alternative arguments for affirmance fare no better. First, although Appellees ask this Court to overrule the district court's holding that Appellants have standing, they do not dispute that Appellants are suffering Article III injury. Moreover, consistent with binding precedent, Appellees expressly concede that the connection required for standing purposes is "interconnected with" the *Ex Parte Young* doctrine. *See* State Br. 51. Thus, because Appellees have a sufficient connection for *Ex Parte Young* purposes, they also have a sufficient connection for standing purposes. In any event, Appellants have standing because obtaining a declaratory judgment that the Act is unconstitutional would substantially diminish the risk that the Act would be successfully enforced against them. *See infra* at § V.

Moreover, although Appellees repeatedly criticize Appellants' purported failure to *specifically* anticipate and *rebut* Appellees' *defenses* to jurisdiction (such as the meritless distinction of *Bruning* based on purported differences with

4

Nebraska law), it is clear (and, again, undisputed) that all that is required is a short and plain statement of general jurisdictional allegations. *See* State Br. 30. Appellants' Complaint more than satisfies this minimal threshold requirement. *See infra* at § II.

## ARGUMENT

**I. APPELLEES' POSITION WOULD FORCE APPELLANTS TO CENSOR THEIR SPEECH OR EXPOSE THEMSELVES TO CRIPPLING LIABILITY, AND LIKEWISE WOULD FORECLOSE PRE-ENFORCEMENT JUDICIAL REVIEW IN A STARTLING RANGE OF CIRCUMSTANCES.**

The First Amendment does not allow states to impose a Hobson's Choice on speakers by precluding judicial review until after the speakers have been exposed to liability under a speech-suppressing law. DRN Br. 9-12, 17-22. Nonetheless, Appellees cannot and do not deny that, if the Court accepts their view, Appellants will face precisely this choice. *See, e.g.*, State Br. 24 (arguing that "no state official" is subject to this pre-enforcement challenge). Tellingly, Appellees also do not deny that their position would apply in a wide range of speech-suppressing circumstances. *See* DRN Br. 10. For example, Appellees in no way dispute that, under their view, "the Arkansas General Assembly could shield a statute imposing $10,000 penalties on anyone who 'criticizes' the Governor or Legislature from any pre-enforcement challenge, simply by authorizing private rights of action by any person 'offended' by the criticism." *See id.* at 11.

5

To be sure, Appellants try to downplay the *significance* of restricting speech in this startling manner.  Appellees insist, for instance, that the Hobson's Choice faced by Appellants is no different from a product manufacturer's decision about whether to sell a particular product in Arkansas, even though doing so will expose it to tort liability in the event of a defect.  State Br. 50.  This analogy is deeply flawed on three levels.  *First*, the regulation of dangerous consumer products is not remotely analogous to restricting constitutionally protected speech.  Indeed, there is a unique "credible threat" standard that applies to pre-enforcement challenges of speech restrictions.  *See* DRN Br. 17-22.  *Second*, imposing tort liability in the event of a defect is plainly distinguishable from imposing an outright ban. Because the ALPR statute clearly targets DRN and its competitors by completely banning their collection and dissemination of ALPR data, the proper analogy is a state statute banning the sale of a particular product.  In such circumstances, the product's manufacturer would be entitled to seek a pre-enforcement declaratory judgment challenging the ban.  *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294-95 (6th Cir. 1997).  *Third*, the Attorney General has a much closer connection to a suit filed against Appellants under the Act than he would have with respect to tort claims filed against a product manufacturer, because Appellants would defend the suit by challenging the Act's constitutionality, thus triggering the Attorney General's unilateral right to intervene.

6

In short, it is unreasonable to interpret *Ex Parte Young* to close the courthouse door to those seeking to challenge an outright speech ban, solely because the ban is enforced through automatic statutory "damages" of $1,000 per photo, Ark. Code Ann. § 12-12-1807(b), rather than a $1,000 civil penalty or other forms of speech regulation. After all, "[t]he obligation to pay" an "award of damages …. can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone v. Liggett Group*, 505 U.S. 504, 521 (1992) (plurality). Because states should not be permitted to control speech in this manner without providing speakers a meaningful opportunity for judicial review, Appellees' theory should be rejected at the threshold.

## II.     THE COMPLAINT IS NOT DEFICIENT.

Appellees' repeated assertion that the Complaint fails adequately to "allege facts supporting jurisdiction," State Br. 30, does not hold water. Federal Rule of Civil Procedure 8(a)(1), on which Appellees rely, *see* State Br. 30 & n.2, simply requires "a short and plain statement of the grounds for the court's jurisdiction." Importantly, whether a complaint contains the requisite "short and plain statement" is determined pursuant to three guiding principles. *First*, the jurisdictional question at issue here is a purely legal question, *see 281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014) (*"281 Care Committee II"*); *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013). *Second*, the court must "accept as true

7

all material allegations in the complaint and construe the facts in the light most favorable to the plaintiffs below, here Appellants." *E.g.*, *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 484 n.1 (8th Cir. 2006); DRN Br. 16-17. *Third*, "[a]t the pleading stage, *general* factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added); *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 406 (8th Cir. 2013) ("a complaint 'need not include detailed factual allegations'").

Accordingly, under the second and third principles, it is clear that plaintiffs are not put to the Sisyphean task of anticipating and specifically rebutting defendants' *responses* to jurisdictional allegations by, for example, specifically pleading that Nebraska's and Arkansas's state officers have identical powers, in order to "rebut" the district court's meritless distinction of *Bruning*. Rather, it suffices that a plaintiff's allegations, most favorably construed, generally assert the necessary jurisdictional prerequisites, since any specific assertion or rejoinder is encompassed therein. This is particularly true where, as here, the arguments by defendants purportedly requiring rebuttal are themselves purely legal questions that can be judicially noticed—such as the constitutional powers of the Nebraska officials in *Bruning*.

8

It is indisputable that Appellants' Complaint satisfies this general allegation standard, since it is quite unusually detailed in its jurisdictional averments. It identifies the jurisdictional provisions under which this action was filed. J.A. 7 (¶4), 9 (¶¶12-15). It makes clear that Appellants are seeking prospective relief (J.A. 7-8 (¶¶4-6), 18-19 (¶¶47-57), 20), against state officers in their official capacities (J.A. 8 (¶¶10-11), 19 (¶53)), based on an alleged violation of federal law (J.A. 7-8 (¶¶4-6), 16-18 (¶¶40-46), 19 (¶¶52, 54, 56))—all of which are elements of the *Ex Parte Young* doctrine. It details the way in which the Act has injured Appellants. J.A. 8 (¶¶5, 7), 12-16 (¶¶26-39), 19 (¶¶54-56). Moreover, the Complaint spells out that the Governor is sued in his official capacity because he is "the chief executive of the State of Arkansas" and, as such, "is responsible for the execution and enforcement of the State's laws" (J.A. 8 (¶10)), including the Act at issue here (J.A. 19 (¶53)). The Complaint further cites Article VI, § 2, of the Arkansas Constitution (J.A. 8 (¶10)), which vests the Governor with "[t]he supreme executive power of [the] State." In addition, the Complaint explains that the Attorney General is sued in his official capacity because of his "enforcement" role—namely, that he "'is Arkansas's chief law enforcement officer' and is 'committed to protecting and defending the interests of all Arkansans'" (J.A. 8 (¶11)), including by "enforcing the Act" at issue here (J.A. 19 (¶53)). Finally, the Complaint cites a webpage produced by the Attorney General, which describes his

9

powers.  *See* J.A. 8 (¶11) (citing *Arkansas Attorney General: Our Office—Departments*, at http://arkansasag.gov/our-office/departments (describing the Attorney General's authorities to represent the State's interests in court, issue legal opinions to state officials, defend state agencies, advise state agencies, enforce laws prohibiting deceptive trade practices, and perform law-enforcement activities)).

III.  *BRUNING* ESTABLISHES THAT THE GOVERNOR AND ATTORNEY GENERAL HAVE A SUFFICIENT CONNECTION WITH THE ACT DUE TO THEIR GENERAL AUTHORITY TO EXECUTE AND ENFORCE STATE LAW.

*Bruning* conclusively demonstrates that the authority of the Governor and Attorney General to enforce Arkansas law establishes a sufficient connection with the Act for *Ex Parte Young* purposes.  DRN Br. 12-13, 25-33.  Appellees' protestations to the contrary lack merit.

1.     The district court purported to distinguish *Bruning* by reasoning that "Arkansas law differs … from Nebraska law in that Nebraska specifically tasks both the attorney general and the governor with the duty to implement state laws." J.A. 141.  Appellants' opening brief dismantled this reasoning by showing that Appellees also have a general duty to implement state laws and that "the connection that Arkansas's Governor and Attorney General have with the Act is at least as strong, if not stronger, than the connection that Nebraska's Governor and Attorney General had with the same-sex-marriage ban in *Bruning*."  DRN Br. 13;

10

*id.* at 8, 12-13, 27-33.  In response, Appellees do not generally assert, much less specifically show, that the authorities of Arkansas's Governor and Attorney General are different than the authorities enjoyed by Nebraska's Governor and Attorney General.  Notably, Appellees do not dispute that the relevant language in Nebraska's Constitution is identical in all material respects to the language in Arkansas's Constitution.  *See id.* at 28.  Appellees likewise fail to respond to the point that the Nebraska statute cited once (but never quoted or discussed) in *Bruning* is nothing more than a statutory *confirmation* of the authority found in Nebraska's Constitution.  *See id.* at 29 n.5.  Thus, it is now uncontested that the district court's distinction of *Bruning* is irretrievably flawed.  This point is dispositive because the general authorities that the Arkansas Governor and Attorney General have to enforce state law are the same authorities that provided the requisite connection in *Bruning.*

    2.    Having abandoned the district court's theory, Appellees instead launch a frontal assault on *Bruning*.  Appellees assert that "the *Young* rule requires there be [*sic*] a connection with actual *enforcement* of the act."  State Br. 23; *see also id.* at 36.  On the contrary, even if *Bruning* had not dispositively resolved this issue, it is clear that the requisite connection need not involve "enforcement."

    To be sure, *Ex Parte Young* and similar cases sometimes refer to an official's "connection with the enforcement of the act."  *E.g.*, *Ex Parte Young*, 209

11

U.S. at 157. But such cases refer to "enforcement" only because enforcement was the relevant "connection" in those cases. Nothing in those cases suggests that the only cognizable connection to the challenged law is a specific enforcement role. *See* DRN Br. 22-25. Indeed, in addition to *Bruning*, this Court has directly held that, although courts "do require 'some connection' between the attorney general and the challenged statute, that connection does not need to be primary authority to enforce the challenged law." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (*"281 Care Committee I"*). The numerous cases in which *Ex Parte Young* defendants are not enforcing the law further underscore that the requisite connection need not specifically relate to enforcement. For instance, every prison case involves a warden who is administering the institution, not enforcing the law. *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678, 692 (1978). In addition, in *Papasan v. Allain*, 478 U.S. 265 (1986), the Court held that a secretary of state who had "'*general supervision' of the administration* by the local school officials" that had created the relevant funding disparity was a proper defendant under *Ex Parte Young*. *Id.* at 282 n.14 (emphasis added); *see also* PI Tr. at 103; DRN Br. 27 n.4.[1]

In any event, as noted, Appellants' position is untenable because it is

---

[1] *Fitts v. McGhee*, 172 U.S. 516 (1899), *see* State Br. 49-50, is irrelevant because the Court subsequently held that the requisite connection "might exist by reason of the general duties of the officer to enforce [the challenged statute] as a law of the State." *Ex Parte Young*, 209 U.S. at 158; *see id.* at 154; *Bruning*, 455 F.3d at 864; DRN Br. 26-27 & n.4.

12

irreconcilable with *Bruning*. Contrary to Appellees' contention, *see* State Br. 29, the same-sex-marriage ban at issue in *Bruning* did "not require affirmative enforcement by any state official" and did not grant a right or remedy to any state official or agency. *Bruning*, 455 F.3d at 864. Rather, the *county* clerks merely *adhered* to the same-sex-marriage ban when issuing marriage licenses. The *Attorney General* could not sue to *enforce* the ban. Nonetheless, the Attorney General's and Governor's *general* duties to execute and enforce state law were sufficient for *Ex Parte Young* purposes. *Id.* Indeed, as Appellees ultimately concede, *Bruning*'s holding is *not* based on "potential judicial enforcement against the plaintiffs," but is instead based on the power to issue advisory opinions to the legislature and the duty "to *implement and enforce* Nebraska laws and the constitution." State Br. 28 (emphasis in original). Thus, all agree that *Bruning* found that *Ex Parte Young* was satisfied by such general law enforcement responsibilities, rather than any specific, enforcement-based connection.

3.     Appellees next seem to suggest that *Bruning* is somehow not controlling because its discussion of the sovereign-immunity issue is "brief," and follows a lengthier discussion of standing. State Br. 27. But, however brief the discussion, it is undisputed that *Bruning* expressly *held* that there was a sufficient connection for Eleventh Amendment purposes. *Bruning*, 455 F.3d at 863-64; State Br. 29. Moreover, this Court reached its Eleventh Amendment holding after

13

considering an "amicus brief submitted by eleven States," *Bruning*, 455 F.3d at 864, and that amicus brief made the *same* argument that Appellees are recycling in the present case—namely, that the "[g]eneral authority" to "execut[e] the laws of the state" is "insufficient to render government officials subject to lawsuits challenging the validity of state laws."  Amicus Br. of the State of Indiana et al., *Citizens for Equal Protection, Inc. v. Bruning*, No. 05-2604, 2005 U.S. 8th Cir. Briefs LEXIS 711, at *7-8 (8th Cir. 2005).  Importantly, in ostensible support of this argument, the amicus brief cited out-of-circuit cases applying *Ex Parte Young*'s "some connection" standard.  *Id.* (citing *Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003); *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113-14 (3d Cir. 1993)).  In short, *Bruning*'s holding on the Eleventh Amendment issue is dispositive here, especially since this Court considered and rejected precisely the same argument that Appellees are now repeating.[2]

    In any event, even if Appellees were correct that *Bruning*'s Eleventh Amendment discussion was a short analysis tacked on to a more lengthy standing

---

[2] Appellees' reliance on the Eleventh Amendment analysis from *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*), *see* State Br. 15, 22, is misplaced because this Court reached a contrary conclusion in *Bruning*.  Moreover, only seven of fourteen judges in *Okpalobi* concluded that the defendants were immune; five judges disagreed and two judges did not reach this issue.  *Id.* at 409 & n.*; *id.* at 429 (Higginbotham, J., concurring); *id.* at 441 (Benavides, J., concurring in part and dissenting in part); *id.* at 441 (Parker, J., dissenting).

14

analysis, that fact would simply underscore one of Appellants' points—namely, that once a sufficient connection has been established for standing purposes, there *necessarily* is a sufficient connection for sovereign-immunity purposes. *See* 455 F.3d at 864. That is, *Bruning* viewed the connection required for standing and the connection required for *Ex Parte Young* purposes as coextensive—and it held that there was a sufficient connection for both purposes. Here, the district court erred by finding no Eleventh Amendment connection even though there is concededly Article III standing. J.A. 138-40.

4. Finally, while conceding that there is a "general duty of executive agencies to implement and enforce [Arkansas] law," Appellees make the peculiar argument that there is no precedent demonstrating that "the responsibilities of the 'executive branch' to implement the law are also the responsibilities of the Governor and Attorney General." State Br. 33, 34. But, of course, the "executive branch['s]" implementation duties must be those of the Governor and the Attorney General, because the Governor *heads* that branch and possesses the executive power, while the Attorney General is the Branch's chief law enforcement officer. The Governor is constitutionally vested with the "supreme executive power," Ark. Const. Art. VI, § 2, is constitutionally charged with seeing that state laws are "faithfully executed," *id.*, Art. VI, § 7, and is "the chief of the executive branch of the government," *Rockefeller v. Hogue*, 429 S.W.2d 85, 90 (Ark. 1968). *See also*

15

DRN Br. 28-33.[3]  Similarly, the Constitution states explicitly that the Attorney General is part of the executive branch, *see* Ark. Const. Art. VI, § 1, and Appellees do not dispute that the Attorney General is the State's "chief law enforcement officer," DRN Br. 30; J.A. 8 (¶10).

## IV.  EVEN IF A MORE SPECIFIC CONNECTION IS REQUIRED, APPELLEES PLAINLY HAVE SUCH A CONNECTION.

### A.  The Attorney General's Right to Intervene

In *Missouri Protection & Advocacy* and *Reproductive Health Services*, the Attorney General was a proper party under the Eleventh Amendment even though he had only a remote, highly improbable connection to any enforcement—and his involvement hinged on numerous contingencies relating to the actions of third parties.  DRN Br. 35-40; *see also* State Br. 41 (acknowledging that the Attorney General's "potential" connection in *Reproductive Health Services* was "remote"). This is dispositive because Appellees do not dispute that, as Appellants' opening brief expressly contended, "[h]ere, the connection between the Arkansas Attorney General and the Act is more direct, and the potential for his involvement in enforcement is far more likely, than in either *Reproductive Health Services* or *Missouri Protection & Advocacy*."  DRN Br. 39; *see also id.* at 33-40.   Nor could

---

[3] Contrary to Appellees' suggestion, State Br. 33-34, the scope of executive authorities relevant to this case has not materially changed since 1836.  *See, e.g.*, Ark. Const., Art. V, §§ 1, 10 (1836); Ark. Const. Art. VI, §§ 1-2, 5 (1868); Ark. Const., Art. VI, §§ 1-2, 7 (current).

Appellate Case: 14-3084     Page: 22     Date Filed: 12/04/2014 Entry ID: 4222298

this be reasonably disputed, because (a) there is a very high probability that Appellants will be sued by private parties if they collect or disseminate ALPR data in Arkansas, *see, e.g.*, DRN Br. 20; State Br. 16; (b) the only disputed question in such a private action would be the constitutional question, DRN Br. 35; and (c) the Attorney General has a unilateral right to intervene in such an action, *id.* at 13.

While Appellees do not and cannot dispute the high probability of the Attorney General's inevitable intervention here, they seek to muddy the waters through a one-sentence, conclusory footnote, which states that "the Attorney General receives many dozens of notices of constitutional challenges in private litigation every year and rarely takes action on them." State Br. 41 n.4. While the Attorney General undoubtedly ignores *frivolous* constitutional objections (which may well constitute the lion's share of notifications to him), there is no reason to believe that he violates his oath by failing to defend the State's laws against serious attacks—and nothing in Appellees' cryptic footnote suggests such gross malpractice. Accordingly, the footnote in no way hints that he will simply abandon the Act—especially since, in the district court's words, Appellants have "fairly compelling" arguments attacking its constitutionality. J.A. 137. More to the point, Appellees' footnote neither denies that the Attorney General intervenes in serious constitutional cases nor disclaims any intent to intervene in a case brought under the ALPR Act. In short, in the absence of an official policy or

17

explicit testimony that the Act will not be enforced, Appellees' footnote does not rebut the presumption of a credible threat of enforcement. *See* DRN Br. 18-21.

Appellees are also incorrect when they assert that *Missouri Protection & Advocacy* and *Reproductive Health Services* are distinguishable because they involved "criminal statute[s] (which confer[ ] rights upon the state)." State Br. 42. The "some connection" standard is applied the same way in both criminal and civil cases.[4] Appellees cannot cite *any* authority for their invented distinction—and it makes no sense. All agree that the relevant issue is whether the state officer has a "sufficient connection" to the law being challenged—this inquiry is inherently not affected by whether the challenged law is criminal or civil. This is particularly true because civil statutes are struck down as unconstitutional at least as frequently as criminal laws.

Flailing for another way to distinguish *Reproductive Health Services*, Appellees note that "the Court found that the Missouri Attorney General might be a potentially proper party," but that it ultimately "vacated a preliminary injunction against the Missouri Attorney General." State Br. 37. But the relevant question

---

[4] *See Bruning*, 455 F.3d at 864-65 (civil); *281 Care Committee I*, 638 F.3d at 632 (finding a sufficient connection with a *criminal* statute, partly because the attorney general was responsible for defending a state office's decisions in *civil* proceedings); *Reproductive Health Services*, 428 F.3d at 1142 (criminal); *Missouri Protection & Advocacy*, 499 F.3d at 807 (criminal); *cf. Mobil Oil Corp. v. Attorney General of Va.*, 940 F.2d 73, 76-77 (4th Cir. 1991) (civil); DRN Br. 19.

18

here is the Eleventh Amendment, so the relevance of *Reproductive Health Services* is its Eleventh Amendment holding, not its subsequent discussion of whether a preliminary injunction should be vacated due to the lack of a "threat of irreparable injury by the Attorney General" on the facts of that case. 428 F.3d at 1145. And this Court's subsequent treatment of *Reproductive Health Services* confirms the vitality of its Eleventh Amendment holding. *See 281 Care Committee I*, 638 F.3d at 633 (explaining that the Court found that the "connection" at issue in *Reproductive Health Services* "was sufficient to make the attorney general amenable to suit under *Ex Parte Young*"). In any event, *Reproductive Health Services*' "irreparable injury" holding concerning a preliminary injunction says nothing about the propriety of the *declaratory* relief sought by Appellants here.

Nor does Appellees' half-hearted attempt to distinguish *Mobil Oil* withstand scrutiny. In Appellees' view, *Mobil Oil* is inapposite because the Fourth Circuit was merely addressing the question whether Virginia's Attorney General was sufficiently connected to the statute in question, even though "he had not threatened to enforce" that law. State Br. 42. Appellees are mistaken. The Fourth Circuit expressly held that, even if the statute, as here, "is intended to be enforced by *private* suits," the Attorney General had a sufficient connection for standing purposes because he "could *intervene* as of right to defend the constitutionality of the statute." *Mobil Oil*, 940 F.2d at 76-77 (emphases added); DRN Br. 39-40.

19

**B.    The Attorney General's Right to Initiate a Direct Enforcement Action**

Appellees state, in passing, that the arguments relating to the DTPA and the Attorney General's common-law authority were not raised below.  State Br. 42-43. But just as a plaintiff may raise on appeal "any argument" in support of a claim that was raised below, *Yee v. Escondido*, 503 U.S. 519, 534 (1992); *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006), so too may a plaintiff raise any argument in support of a jurisdictional theory that was raised below. Here, Appellants preserved the arguments in question because they argued in the district court that the Attorney General and Governor are proper parties under *Ex Parte Young*, for reasons including the likelihood that the Attorney General would become involved in enforcing, or defending against claims under, the ALPR statute. *See, e.g.*, Pls.' Opp'n to Mot. to Dismiss (Dkt. 23) at 19-27.  In any event, even if these arguments were not raised below, it is appropriate for this Court to exercise its broad discretion to consider these contentions because they are purely legal arguments, have been fully briefed, and are subsidiary to arguments that were made below.  *Yee*, 503 U.S. at 534; *United States v. Montgomery*, 550 F.3d 1229, 1238 (10th Cir. 2008); *Gill v. INS*, 420 F.3d 82, 87 (2d Cir. 2005).

1.    Appellants' opening brief argued that the Attorney General has "some connection" with the Act because he has the authority to file an enforcement action against Appellants under the DTPA, on the grounds that the collection and

20

dissemination of ALPR data allegedly constitute unconscionable practices. DRN

Br. 40-43. In response, Appellees do not dispute that (a) the Attorney General can

file DTPA actions to challenge unconscionable practices, (b) this Court has held

that unconscionable practices include violations of statutes or public policy,

(c) unconscionable practices also include practices that are unreasonable, and

(d) the collection and dissemination of ALPR data, in Appellees' view, violate a

statute, public policy, or reasonableness. Instead, Appellees argue that Appellants'

speech does not fall within the DTPA and that, in any event, any DTPA action

filed against Appellants would be unrelated to the ALPR statute. These arguments

are unavailing.

Appellees insist that the Arkansas Supreme Court's definition of an

"unconscionable" practice does not refer to violations of statutes or public policy.

*See* State Br. 44. Appellees are wrong. This Court held last year that "[t]he

Arkansas Supreme Court defined an unconscionable act as 'an act that affront[s]

the sense of justice, decency, or reasonableness' *including acts that violate public*

*policy or a statute*." *Brown v. Mortgage Elec. Registration Sys.,* 738 F.3d 926, 935

(8th Cir. 2013) (quoting *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 n.6 (Ark.

2006)) (emphasis added); DRN Br. 41. In so holding, this Court relied on the

Arkansas Supreme Court's decision in *Baptist Health*, which affirmed the finding

of a DTPA violation and quoted the lower court's conclusion that unconscionable

21

practices "include[ ] conduct violative of public policy or statute." 226 S.W.3d at 811-12, *abrogated in part on other grounds by Baptist Health v. Murphy*, 373 S.W.3d 269, 289 (Ark. 2010). Moreover, other decisions from Arkansas's highest court demonstrate that violations of public policy, statutes, regulations, or constitutional provisions can support an action under the DTPA. *See State ex rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 303 (Ark. 1999) (DTPA "encompass[es] a scheme that violates the "policy" and "constitutional prohibition against usury"); *see also Ortho-McNeil-Janssen Pharms., Inc. v. State*, 432 S.W.3d 563, 569-70 (Ark. 2014) (State's theory that companies violated the DTPA because they violated "a federal labeling requirement").

In any event, even Appellees agree that unconscionable practices include speech or actions that affront a sense of reasonableness. State Br. 44. In this case, Appellees' position on the merits is that the ALPR statute safeguards citizens' "reasonable expectation of privacy," which allegedly is compromised when license plates are photographed. Defs.' Br. in Resp. to Mot. for Prelim. Inj. (Dkt. 22) ("PI Opp'n") at 2, 15, 16; *see id.* at 12-19. Appellees insist that "[t]he Act … is about Big Data and its privacy-invading implications for our society." *Id.* at 13; *see* Brandeis & Warren, *The Right to Privacy*, 4 Harv. L. Rev. 193, 195 (1890). Indeed, Appellees argue that Arkansas has a "*substantial* interest" in banning Appellants' privacy-invading photos, sufficient to satisfy "either 'intermediate

22

scrutiny' or the *Central Hudson* test." PI Opp'n at 12; *see also id.* at 19 (saying interest is "compelling"). Since the Attorney General affirmatively believes that Appellants' actions are so contrary to basic privacy concerns that the State has a "substantial" or "compelling" interest in banning them even if they are constitutionally protected speech, he necessarily believes that they are an "unconscionable" invasion of privacy norms. Accordingly, Appellants' actions fall within the core of the DTPA as the Attorney General himself interprets it, and an enforcement action by him is therefore more than plausible. (While Appellees obviously dispute that the ALPR statute protects legitimate privacy interests, the only relevant question here is the Attorney General's view.)

Finally, Appellees are wrong to suggest that, even if the Attorney General could bring a claim against Appellants under his DTPA authority, such a claim would have nothing to do with the ALPR statute. On the contrary, the basis for the DTPA suit would either be a violation of the ALPR statute or a violation of the public policy embodied in that statute. And the fact that the ALPR statute is on the books substantially increases the probability that such an action will be filed. *Cf. Shell Oil Co. v. Noel*, 608 F.2d 208, 212 (1st Cir. 1979).[5]

---

[5] Contrary to Appellees' suggestion, *see* State Br. 43, Appellants do not concede that they would be liable in an action filed under the DTPA. Again, we concede only the reasonable probability that such an action will be filed, not that it will prevail.

23

2.      Appellants' opening brief contended that the Attorney General has a sufficient connection with the Act due to his common-law authority to file civil proceedings that target public nuisances such as invasions of rights on highways. DRN Br. 43-46.  In response, Appellees expressly concede that the Attorney General has the power to bring such common-law actions, State Br. 39, and they do not dispute that this power encompasses common-law actions that target invasions of rights on highways.  Nor do Appellees contest that, in their view, the use of an ALPR system invades rights on highways.  Appellees' *only* counterargument is their conclusory assertion that "[a] common law nuisance action has no relation to the ALPR Act."  State Br. 45.  As noted in Appellants' opening brief, however, the ALPR statute is the very basis for deeming Appellants' actions a "public nuisance[ ]," particularly since the "Act declares unauthorized ALPR use 'unlawful,' instead of stating simply that unauthorized ALPR users are subject to potential civil liability."  DRN Br. 43-46; *Shell Oil*, 608 F.2d at 212 (noting that "[a] statute declaring conduct 'unlawful' is of a different order of magnitude with respect to public policy than a statute which determines the right of one person to recover from another").  For this reason, a common-law action targeted at ALPR use would be directly related to the ALPR statute.  Thus, Appellees' only response to Appellants' common-law theory is wholly unpersuasive.

Appellate Case: 14-3084     Page: 30     Date Filed: 12/04/2014 Entry ID: 4222298

## C.  The Attorney General's Role in Defending Suits Filed Under the ALPR Statute

Appellants' opening brief explained that the Attorney General has a connection with the Act because there is a substantial probability that he will be involved in defending against lawsuits filed under the Act.  DRN Br. 46-48. Appellees' only response is that the Attorney General's involvement in a representative capacity (rather than as a party) is irrelevant.  State Br. 46.  This argument is squarely foreclosed by binding precedent.  *See, e.g.*, *See 281 Care Committee I*, 638 F.3d at 632 (finding a sufficient connection, in part because the attorney general might become involved, in a representative capacity, in defending a state office's decisions under the statute); *Missouri Protection & Advocacy*, 499 F.3d at 807 (finding a sufficient connection because the attorney general might become involved, in a representative capacity, in a prosecution).  Moreover, Appellees' argument is not responsive to Appellants' separate contention that the Attorney General has a sufficient connection with the Act because *he* might be a defendant in an action filed under the Act.  DRN Br. 48.

## D.  The Governor's Powers to Direct the Attorney General's Handling of ALPR Litigation

The Governor is sufficiently connected to the Act because he could order the Attorney General not to defend the Act's constitutionality and not to initiate a suit against Appellants based on the speech at issue here.  DRN Br. 48-49; *cf.* Stmt. of

Appellate Case: 14-3084     Page: 31     Date Filed: 12/04/2014 Entry ID: 4222298

Att'y Gen. on Litigation Involving the Defense of Marriage Act, U.S. Dep't of Justice (Feb. 23, 2011). Appellees cite *no* precedent holding that the Governor cannot so order the Attorney General. Instead, they simply state that the Governor's control over constitutional litigation in *Lake View School District No. 25 v. Huckabee*, 340 Ark. 481 (2000), is irrelevant because "the Attorney General was acting the [*sic*] attorney for the Governor and other executive branch officials," but was not himself a party. State Br. 35-36. As discussed above, however, binding precedent forecloses Appellees' view that acting in a representative capacity is irrelevant for *Ex Parte Young* purposes. *See supra* at § IV.C.

## V. APPELLANTS HAVE ARTICLE III STANDING.

There is no question that Appellants are suffering present injury and that they have a live dispute with the State of Arkansas, which has prohibited them from engaging in the speech at issue here. Appellees make the baffling assertion that, although there is "standing" in this case, there is "no Article III case or controversy between DRN and the State." State Br. 50, 52 (capitalization and emphasis omitted). But, of course, the *reason* Appellants have standing is *because* of their live controversy with the State. *Lujan*, 504 U.S. at 560; J.A. 138-39. Appellants wish to take photographs using ALPR cameras and disseminate the resulting information. The State has, however, banned them from doing so—and this imposes Article III injury on them by compelling either self-censorship or

26

exposure to crippling liability.  *See supra* at § I; DRN Br. 17-22; *Gaertner*, 439

F.3d at 487; J.A. 80; State Br. 16 (Appellees' concession that "[t]he complaint does

assert potential harm that could support standing").  Faced with this dilemma,

Appellants have, as the district court found, ceased speech because of a reasonable

fear of extensive litigation under the Act.  J.A. 138.

      The only question here, then, is whether Appellants have a right to proceed

against these state officers.  *Bruning* held that a sufficient connection for

sovereign-immunity purposes is also sufficient for Article III standing purposes.

*See* 455 F.3d at 864 ("[T]he Governor and the Attorney General have 'some

connection with the enforcement' of § 29 and therefore this suit for equitable relief

falls within … *Ex parte Young*.  This satisfies the case or controversy requirement

of Article III.") (citation omitted).  Consistent with this precedent, Appellees

concede that Article III's case-or-controversy "requirement is interconnected with

the *Young* rule."  State Br. 50-51.  Consequently, for the reasons discussed above

and in Appellants' opening brief, the Governor and Attorney General are

sufficiently connected with the Act for both Eleventh Amendment and Article III

purposes.

      At a minimum, Appellants have standing to seek a declaratory judgment.

J.A. 138-39.  Under the Declaratory Judgment Act, the relevant question "'is

whether the facts alleged, under all the circumstances, show that there is a

Appellate Case: 14-3084     Page: 33     Date Filed: 12/04/2014 Entry ID: 4222298

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Appellants easily satisfy this standard. If they were to obtain a declaratory judgment that the Act is unconstitutional, it would substantially diminish the risk that the Act would be successfully enforced against them. Specifically, such a declaratory judgment would significantly reduce the probabilities (a) that a private party would sue Appellants under the ALPR statute, (b) that the Attorney General would intervene in any such suit to defend the constitutionality of the Act, and (c) that the Attorney General would file a DTPA action or a common-law suit based on Appellants' collection and dissemination of ALPR data. Even if potential private plaintiffs would not be formally bound by such a declaratory judgment, the Supreme Court has held that standing exists where, as here, the "practical consequence" of the declaratory judgment "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly addresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002); *see also id.* at 459 (plaintiff had standing even though the President and other officials—and not defendant—had final authority over the census, because it was substantially likely that the President and other officials would abide by the defendant's calculations, even though they were not bound by them); *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (opinion of

28

O'Connor, J.) (same); *Mobil Oil*, 940 F.2d at 76 (finding standing to seek a declaratory judgment that would effectively prevent the Attorney General from intervening in a private suit). As *Bruning* expressly stated, standing exists so long as "the relief sought … would remedy at least *some* of the alleged injury." 455 F.3d at 864 (emphasis added). In all events, a declaratory judgment issued by this Court would create precedent that binds federal and state judges in Arkansas, thereby providing full redress by eliminating the possibility that *any* enforcement action against Appellants would be successful. *See Malvern Gravel Co. v. Mitchell*, 238 Ark. 848, 854 (1964) (holding that the Arkansas Supreme Court is "bound by the decisions of the Federal Courts" on a federal issue).

## CONCLUSION

Appellants respectfully request that this Court reverse the district court's order granting the motion to dismiss, vacate the judgment, and vacate the denial of Appellants' preliminary injunction motion.

Dated: December 4, 2014

Respectfully submitted,

s/ Michael A. Carvin
Michael A. Carvin
Ryan J. Watson
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
macarvin@jonesday.com
rwatson@jonesday.com

29

Jane W. Duke
MITCHELL, WILLIAMS, SELIG,
   GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
Telephone:  (501) 688-8842
Facsimile:  (501) 918-7842
jduke@mwlaw.com

*Counsel for Plaintiffs-Appellants*

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that, in accordance with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) and the general requirements set forth in Federal Rule of Appellate Procedure 32(a)(7)(C) and Eighth Circuit Rule 28A(c), this brief is proportionately spaced, has a typeface of 14-point Times New Roman, contains 6,918 words, and was prepared using Microsoft Office Word 2007.  I further certify that the brief has been scanned for computer viruses, and that it is virus-free.

Dated: December 4, 2014                Respectfully submitted,

<u>s/  Michael A. Carvin</u>
Michael A. Carvin
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
macarvin@jonesday.com

*Counsel for Plaintiffs-Appellants*

Appellate Case: 14-3084     Page: 37     Date Filed: 12/04/2014 Entry ID: 4222298

## ADDENDUM OF PERTINENT STATUTES AND REGULATIONS

## TABLE OF CONTENTS

**Page**

Ark. Const. Art. V, §§ 1, 10 (1836) ........................................................................A1

Ark. Const. Art. VI, §§ 1-2, 5 (1868) ...................................................................A2

Federal Rule of Civil Procedure 8(a)(1) ...............................................................A3

**Ark. Const. Art. V, § 1 (1836)**

The Supreme Executive power of this State shall be vested in a Chief Magistrate who shall be styled "The Governor of the State of Arkansas."

**Ark. Const. Art. V, § 10 (1836)**

He shall take care that the laws be faithfully executed.

A1

**Ark. Const. Art. VI, § 1 (1868)**

The Executive Department of this State shall consist of a Governor, Lieutenant Governor, Secretary of State, Auditor, Treasurer, Attorney General and Superintendent of Public Instruction—all of whom shall hold their several offices for the term of four years and until their successors are elected and qualified. They shall be chosen by the qualified electors of this State at the time and places of choosing the members of the General Assembly.

**Ark. Const. Art. VI, § 2 (1868)**

The supreme executive power of this State shall be vested in the Governor.

**Ark. Const. Art. VI, § 5 (1868)**

It shall be the duty of the Governor to see that the laws are faithfully executed.

Appellate Case: 14-3084    Page: 40    Date Filed: 12/04/2014 Entry ID: 4222298

**Federal Rule of Civil Procedure 8(a)(1).  General Rules of Pleading.**

**(a)**  Claim for Relief. A pleading that states a claim for relief must contain:

>  **(1)**  a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

A3

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to all CM/ECF participants, including the following:

Patrick E. Hollingsworth
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201-2610
Telephone: (501) 682-1051
Patrick.Hollingsworth@arkansasag.gov

*Counsel for Defendants-Appellees*

s/  Michael A. Carvin
Michael A. Carvin
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
macarvin@jonesday.com

*Counsel for Plaintiffs-Appellants*

A4